UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERMAN SANCHEZ BEDOYA,

v.                              Case No. 8:04-cr-387-T-24MSS
                                     8:07-cv-174-T-24MSS

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant German Sanchez Bedoya's motion to

vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255

(Doc cv-1; cr-153). A review of the record demonstrates that, for the following reasons,

Bedoya's motion to vacate must be **DENIED**.

BACKGROUND

On January 26, 2005,  Bedoya pled guilty, pursuant to a written plea agreement, to

count one of a two-count indictment. Count one charged Bedoya with conspiracy to

possess with intent to distribute five kilograms or more of cocaine while on board a vessel

subject to the jurisdiction of the United States, in violation of 46 Appendix U.S.C. § §

1903(a), 1903(g), and 1903(j); 21 U.S.C. 960(b)(1)(B)(ii). (Doc. cr-77 [Plea Agreement]; cr-

148 [Transcript of Change of Plea Hearing]; cr-110 [Judgment]).

The written plea agreement contained an appeal waiver that read:

The defendant agrees that this Court has jurisdiction and authority to
impose any sentence up to the statutory maximum and expressly waives the
right to appeal defendant's sentence or to challenge it collaterally on any
ground except (a) an upward departure by the sentencing judge from the
guidelines range determined pursuant to the United States Sentencing
Guidelines; (b) a sentence that exceeds the statutory maximum penalty; or

(c) a sentence that violates the Constitution; provided, however, that if the Government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(Doc. cr-77 at 12).  On April 29, 2005, the Court sentenced Bedoya to one hundred and eight months incarceration as to count one of the indictment. (Doc. cr-110) Count two was dismissed on the Government's motion. Judgment was entered that day, April 29, 2005. (Doc. cr-110)

On May 3, 2005, Bedoya filed a Notice of Appeal. On April 20, 2006, the United States Court of Appeals for the Eleventh Circuit granted the Government's motion to dismiss the appeal "due to a valid appeal waiver contained in Appellant's plea agreement." (Doc. cr-151).  On January 22, 2007, Bedoya signed the present motion to vacate, raising three grounds for relief.  The motion to vacate is timely.

DISCUSSION

Ground One

Bedoya claims that his plea of guilty was not entered knowingly, voluntarily and intelligently because he was never given "real notice" of the true nature of the charges in the indictment "because the Government failed to charge, as an element of the offense, a specific drug quantity."  Ground one has no merit for several reasons.

Bedoya Agreed that His Plea Was Knowing and Voluntary

First, in his written plea agreement, Bedoya acknowledged that he was entering into the agreement and was pleading guilty "freely and voluntarily."  He acknowledged that he understood the nature of the offense to which he was pleading guilty and the elements of the offense, including the penalties provided by law. (Doc. cr-77 at 13).

2

Second, at the change of plea hearing before the United States Magistrate Judge, the Magistrate Judge asked the prosecutor to read the factual basis for the charge.  The Magistrate Judge cautioned Bedoya to listen very carefully to what the prosecutor said because when the prosecutor finished, she [the Magistrate Judge] would ask Bedoya whether he agreed with the facts.  She told Bedoya that if he had any dispute at all about the facts he would need to make the dispute known to her "now."  She also cautioned Bedoya that:

> . . . these facts will not only be used by myself to decide whether your plea is sufficient, but these facts will be used by the district judge in deciding what is the appropriate sentence in the case, based upon how responsible you are for these events.
>
> So if you have any dispute you should let me know now or expect these facts will be used against you for all purposes going forward.

(Doc. cr-148 at 33-34).

The prosecutor read the factual basis for the charge.  The pertinent part reads as follows:

> Your Honor, if this case were to proceed to trial, the United States would be able to establish beyond a reasonable doubt that on August 31, 2004, these defendants Mr. Guizmano, Mr. Ramirez, and Mr. Bedoya, and others were apprehended by the United States Coast Guard in international waters on a vessel without nationality, that is, a vessel subject to the jurisdiction of the United States.
>
> As part of an unlawful agreement to possess 5 or more kilograms of cocaine with the intent to distribute it, these defendants and others were knowingly and willfully transporting across the eastern Pacific Ocean approximately 30 bales.  Each bail contained 20 kilograms of cocaine for a total of 600 kilograms of cocaine, which was to be delivered to other individuals for ultimate distribution into the United States.

(Doc. cr-148 at 34-35).

Bedoya agreed that the facts were true.  The Magistrate Judge specifically asked

Bedoya's defense attorney if Bedoya was stipulating to the quantity of drugs contained in the plea agreement. (Doc. cr-148 at 36). Bedoya's defense attorney agreed that Bedoya was stipulating to the quantity of drugs. (Doc cr-148 at 36).

At the change of plea hearing, Bedoya swore that no one had promised him anything in exchange for his signature on the plea agreement. (Doc. cr-148 at 12).  He swore that the plea agreement was read to him in Spanish, in its entirety, before he signed it. (Doc. cr-148 at 12).  The Magistrate Judge went over the plea agreement in detail, and specifically asked if Bedoya understood the charge. (Doc. cr-148 at 14-15).  Bedoya swore that he did. (Doc. cr-148 at 15). Bedoya swore that his attorney had discussed the guidelines with him (Doc. cr-148 at 17) and that he [Bedoya] did not know what his sentence would be. (Doc. cr-148 at 19).

The Magistrate Judge explained that, by pleading guilty, Bedoya would be giving up his right to a jury trial, and she asked him if anyone had promised him anything to give up his right to a jury trial other than what was in the plea agreement. (Doc. cr-148 at 31-32). Bedoya swore that no one had promised him anything. (Doc. cr-148 at 32).

Subsequently, Bedoya pled guilty to count one of the indictment, which charged him with conspiracy to possess with intent to distribute more than 5 kilograms of cocaine while aborad a vessel subject to the jurisdiction of the United states in violation of 46 United States Code Appendix Sections 1903(g) and 1903(j).  (Doc. cr-148  at 42). He swore that he was pleading guilty because he was guilty. (Doc. cr-148 at 42).

The Magistrate Judge then made a finding that Bedoya was competent, that  his plea was knowing, intelligent, and voluntary, and that it was sufficiently supported by a factual basis "such that the essential elements of this offense can be met." (Doc. cr-148 at

44).

Bedoya's representations regarding the voluntary nature of his plea constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ( "[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion. . . .include credible, valid reasons why a departure from those earlier contradictory statements is now justified." )

Bedoya's own statements in the record belie his contentions that his plea was not voluntary and knowing. *See Bradshaw v. U.S.*, 2005 WL 1669036 *4 (M.D. Fla., July 12, 2005) (slip opinion) ( "Petitioner cannot circumvent the terms of his plea agreement merely because he does not like the outcome at sentencing." )(citing *U.S. v. Bushert*, 997 F.2d 1343, 1350 (11th Cir.1993)).

<u>Drug Type and Quantity Are not Elements of Substantive Offense</u>

Furthermore, drug type and quantity are not elements of a substantive offense under 21 U.S.C. § 960(a), but instead are factors to be considered by the judge at sentencing under § 960(b). *United States v. Coy*, 19 F.3d 629, 637 (11th Cir. 1994) (stating that "the quantity of drugs involved ... under ... § 960 is not an element of the offense that need be pled or proven at trial, but an issue for the court to determine at the sentencing phase"); *cf. United States v. Sanchez*, 269 F.3d 1250, 1266 (11th Cir.2001) (en banc), *cert. denied*, 535 U.S. 942 (2002) ("[Under 21 U.S.C. § 841,] neither the nature nor the quantity of [the] substance is an element of [the] offense that must be submitted to a jury or proved beyond a reasonable doubt. Instead, this Court [has] held that in order to obtain a conviction, the

government need show only that some controlled substance was involved.").[1] By analogy, when 46 U.S.C. App. § 1903(a) is read in conjunction with 21 U.S.C. § 960(b), it is clear from the statutory language that Congress intended for § 1903(a) to state a complete substantive drug offense, without reference to drug type or quantity, and that Congress intended for the sentencing factors enunciated in § 960(b) to come into play only upon a defendant's conviction for an offense under § 1903(a). *United States v. Tinoco*,  304 F.3d 1088, 1100-1101 (2002).

Because the written plea agreement and Bedoya's sworn declarations at the change of plea hearing demonstrate that Bedoya's plea was knowing and voluntary, and because drug quantity is not an element of the offense, ground one does not warrant relief.

Ground Two

Bedoya alleges that his guilty plea is not valid "in a constitutional sense" because the Government failed to charge "as an element of the indictment," a specific drug quantity. Bedoya claims that the Court lacked jurisdiction because "a defective indictment that failed to include an element of the offense, a specific drug charge, denied him due process."

Ground two also has no merit.  *See United States v. Favors*, 54 F. Supp 2d 1328, 1330-1331 (1999).  There is a fairly well-established body of Eleventh Circuit caselaw holding that drug quantities are to be considered as sentencing enhancements rather than a substantive element of the offense. In *United States v. Perez*, 960 F.2d 1569 (11th Cir.1992) (*per curiam), cert. denied*, 507 U.S. 975 (1993), the Eleventh Circuit held that "[b]ecause the quantity of controlled substance triggering the enhanced penalties provided

---

[1] *Unites States v. Sanchez* was abrogated in part on other grounds by *United States v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005).  *See also*, *United States v.  Marpoe,* 153 Fed. Appx. 618 (11th Cir. 2005).

in § 841(b) is relevant only at sentencing, there is no reason that the quantity involved must necessarily appear in the indictment if the defendant is otherwise on adequate notice that enhanced penalties are available." *Id.* at 1574.  In *Perez*, the court went on to state that if the existence of the requisite quantity for the enhancement is established by a preponderance of the evidence at sentencing and due process requirements are met, then "courts are constrained to apply the sentencing framework established by statute, notwithstanding absence of quantitative references in the indictment." *Id.* at 1575. *Perez* was followed by the Eleventh Circuit in *United States v. Harden*, 37 F.3d 595, 601-02 (11th Cir.1994); *United States v. Coy*, 19 F.3d 629, 637 (11th Cir.1994); and *United States v. Stone*, 139 F.3d 822, 834, n. 12 (11th Cir.1998).  Subsequently, the United States Supreme Court held that not every fact expanding a penalty range must be stated in a felony indictment. *See Almendarez-Torres v. United States,* 523 U.S. 224 (1998).

Drug quantities have traditionally been treated as a sentencing factor like recidivism. "Congress clearly intended the sentencing enhancements in 21 U.S.C. § 841(b) to be sentencing enhancements rather than separate substantive offenses.  As in *Almendarez-Torres*, there is only an increase in the felony limits."  *United States v. Favors*, 54 F. Supp at 1331 (citing *United States v. Stone*, 139 F.3d at 838-839).[2]

Because Bedoya has not shown that the absence of a specific drug quantity in the indictment caused the indictment to be defective, he has not shown that this Court lacked jurisdiction to sentence him.  He has not shown that his due process rights were violated

---

[2] In sentencing Bedoya, the Court departed downward two levels and sentenced Bedoya to a low-end advisory guidelines sentence of 108 months incarceration. (Doc. cr-131 at 22).  The court considered "not only the advisory guidelines, but 3553 and one through seven sections of that statute in imposing that sentence." (Doc cr-131 at 22).  Because this sentence fell below the statutory maximum sentence of life imprisonment, the sentence did not violate *United States v. Booker,* 543 U.S. 220 (2005).

at his change of plea hearing or at his sentencing hearing.

Ground two does not warrant relief.

Ground Three

Bedoya alleges that the appeal waiver is invalid because it denies him the protection of the Federal Rules of Evidence.  He contends that when the Government waits until sentencing to disclose the drug amount as an element of the offense, the Government violates the defendant's due process rights because the Government does not give the defendant "real notice" of the true nature of the charges he faces or the maximum or minimum sentence he faces.

Ground three has no merit. The United States Court of Appeals for the Eleventh Circuit found that the appeal waiver *was valid* and granted the Government's motion to dismiss Bedoya's appeal based on the plea waiver.

Ground three does not warrant relief.

Accordingly, the Court orders:

That Bedoya's motion to vacate (Doc. cv-1; cr-153) is denied.  The Clerk is directed to enter judgment against Bedoya in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §

2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 4, 2007.

SUSAN C. BUCKLEW
United States District Judge


AUSA:  Anthony Edward Porcelli

German Sanchez Bedoya, Pro se

9